**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 7, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GERALD P. BARKELL,

          Petitioner - Appellant,

    v.

BRENT CROUSE, Warden, Crowley
County Correctional Facility; R. O.
LAMPERT, Director, Wyoming
Department of Corrections; PATRICK
CRANK, Wyoming Attorney General,

          Respondents - Appellees.

No. 05-8045

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 04-CV-015-B)**

---

Christopher Humphrey, Student Intern, (Diane E. Courselle, Director, on the
brief), Defender Aid Program, University of Wyoming, College of Law, Laramie,
Wyoming, for Petitioner - Appellant.

David L. Delicath, Senior Assistant Attorney General, (Patrick J. Crank,
Wyoming Attorney General, on the brief), Cheyenne, Wyoming, for Respondents
- Appellees.

---

Before **HARTZ**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Gerald Barkell was convicted by a jury in Wyoming state court on two counts of third-degree sexual assault. After initiating an appeal of his conviction, he sought a remand to the trial court for an evidentiary hearing regarding a claim of ineffective assistance of counsel. The Wyoming Supreme Court denied the request. Continuing his appeal without the benefit of an evidentiary hearing, Mr. Barkell contended that his trial counsel had been constitutionally ineffective in the preparation for and conduct of the trial, and that the Wyoming Supreme Court had denied him due process and a meaningful appeal by denying his motion for remand. On October 16, 2002, the court affirmed. *Barkell v. State*, 55 P.3d 1239, 1246 (Wyo. 2002).

On January 14, 2004, Mr. Barkell submitted an application for habeas relief under 28 U.S.C. § 2254 in the United States District Court for the District of Wyoming, raising the same issues raised before the Wyoming Supreme Court. The district court denied relief but granted a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c)(1) (requiring COA). Mr. Barkell now appeals to this court. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We affirm with respect to the claims of denial of due process by the Wyoming Supreme Court and ineffective assistance of counsel during trial. But we reverse and remand for further proceedings on Mr. Barkell's claim that his attorney was ineffective in preparing for trial. Because (1) he presented allegations to the federal district court that, if true, would entitle him to relief; (2) he cannot be faulted for failure

-2-

to develop the supporting evidence in state court; and (3) the state court has not ruled on whether he would be entitled to relief if he were able to prove his allegations, we do not defer to the state court's ruling on his ineffective-preparation claim and we grant him the opportunity to pursue that claim in federal district court.

## I.   BACKGROUND

Mr. Barkell was charged with sexual assault after his 10-year-old stepdaughter, BV, accused him of forcing her to engage in sexual acts on successive nights in early July 1999.  Diane Lozano, an attorney with the Wyoming Public Defender's Office, was appointed to represent him.  On October 26, 1999, Chris McQueen, a contract public defender, replaced Ms. Lozano and represented Mr. Barkell at trial on January 24 and 25, 2000.  The jury returned guilty verdicts on two counts of third-degree sexual assault, in violation of Wyo. Stat. Ann. § 6-2-304(a)(ii).  Mr. Barkell was sentenced to consecutive terms of five-to-seven years' imprisonment on each count.

Mr. Barkell, again represented by the Wyoming Public Defender's Office, filed a timely appeal to the Wyoming Supreme Court on June 5, 2000.  On February 23, 2001, he moved the court to remand the case to the trial court for "an evidentiary hearing to establish the factual basis for a claim of ineffective assistance of trial counsel based on the deficient performance by the trial

counsel." Aplt. App. Vol. I at 86. On March 1 the court denied the motion without comment. It later affirmed Mr. Barkell's convictions.

Mr. Barkell's application under § 2254 claims (1) violation of his right under the Sixth and Fourteenth Amendments to effective assistance of counsel, and (2) violations of the rights to due process and a meaningful appeal by virtue of the Wyoming Supreme Court's denial of his motion for a limited remand. On April 20, 2005, the district court denied the application, stating that the Wyoming Supreme Court's adjudication of his claims was neither contrary to, nor an unreasonable application of, clearly established federal law.

## II. DISCUSSION

### A. Denial of Remand

On appeal Mr. Barkell contends that the state court's refusal to grant a limited remand to develop the record for his ineffectiveness claim violated his rights to due process and a meaningful appeal. The Wyoming Supreme Court rejected this contention, holding that Mr. Barkell could not "rely on mere allegations and speculation" to justify a remand. *Barkell*, 55 P.3d at 1246.

#### 1. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in state court, a federal court will grant habeas relief only when the applicant establishes that the state court decision was "contrary to, or involved an unreasonable application of,

-4-

clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, relief is provided only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Thus we may not issue a habeas writ simply because we conclude in our independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (internal quotation marks and citations omitted).

### 2. Merits

Under AEDPA's standard of review, Mr. Barkell is not entitled to relief on this claim. Mr. Barkell has identified no United States Supreme Court precedent at the time of the Wyoming court's decision that clearly established his right to an evidentiary hearing.

Mr. Barkell argues that "[w]hen the state provides an appeal of right, the defendant has a right to an appellate record that is <u>adequate</u> to present his claims on appeal." Aplt. Br. at 22. As authority for this proposition he cites *Griffin v.*

-5-

*Illinois*, 351 U.S. 12 (1956); *Draper v. Washington*, 372 U.S. 487 (1963); and

*Mayer v. Chicago*, 404 U.S. 189 (1971). *Griffin* held that the Constitution

requires states to provide trial transcripts to indigent defendants appealing their

convictions. *See* 351 U.S. at 19. *Draper* held that a state cannot circumvent

*Griffin* by allowing an indigent defendant a free transcript only if the trial judge

decides that the defendant's claims on appeal are not frivolous. *See* 372 U.S. at

499-500. And *Mayer* held that an indigent defendant is entitled to a free

transcript for purposes of appeal even if he has been convicted only of a

misdemeanor and fined rather than incarcerated. *See* 404 U.S. at 195-98. Thus,

these cases all deal with an indigent defendant's right to obtain for appeal a

transcript of judicial proceedings that would be available to those who can afford

to pay for one, not, as here, an attempt to add to the record of those proceedings

by conducting supplemental proceedings. They do not provide clearly established

precedent for Mr. Barkell's argument.

In addition, Mr. Barkell cites *Cuyler v. Sullivan*, 446 U.S. 335 (1980);

*United States v. Cronic*, 466 U.S. 648 (1984); *Strickland v. Washington*, 466 U.S.

668 (1984); and *Evitts v. Lucey*, 469 U.S. 387 (1985), for the proposition that he

was entitled to the effective assistance of counsel on his appeal. From that

proposition he argues that an evidentiary hearing was necessary for his appellate

counsel to provide adequate representation. But none of the cited cases addresses

denial of an evidentiary hearing in the course of an appeal. *Cuyler* held that a

defendant with a privately retained lawyer, like a defendant with appointed counsel, may raise a Sixth Amendment claim of ineffective assistance. *See* 446 U.S. at 344-45. *Cronic* held that most claims of ineffective assistance require proof of deficient performance and that only rarely do the surrounding circumstances justify a presumption of ineffectiveness. *See* 466 U.S. at 658-62. *Strickland* addressed the "meaning of the constitutional requirement of effective assistance," 466 U.S. at 686, holding that to prove an ineffectiveness claim the defendant must show that counsel's performance "fell below an objective standard of reasonableness," *id*. at 688, and that the deficiency prejudiced the defense, *see id*. at 687. *Evitts* held that due process guarantees the effective assistance of counsel to a defendant pursuing a first appeal as of right. *See* 469 U.S. at 396. These cases simply do not consider the issue now before us. Attractive as Mr. Barkell's legal contention may be, he has not shown that the Wyoming Supreme Court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Penry v. Johnson*, 532 U.S. 782, 795 (2001) (state court's decision was not unreasonable or contrary to federal law when there were "substantial" differences between the case before the state court and the Supreme Court case relied on by the defendant). Nevertheless, as we shall see in addressing Mr. Barkell's allegations of pretrial ineffectiveness of

counsel, the state court's decision to refuse an evidentiary hearing can affect our review of his other claims.

## B. Ineffective Assistance

A defendant making an ineffective-assistance-of-counsel claim must show both that counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. Review of counsel's performance under the first prong of the *Strickland* test is highly deferential. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To be deficient, the performance must be "outside the wide range of professionally competent assistance." *Id.* Counsel's decisions are presumed to represent "sound trial strategy"; "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotation marks omitted). As for the prejudice prong, the defendant must establish a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Stevens*, 978 F.2d 565, 568 (10th Cir. 1992) (internal quotation marks omitted). If the defendant is unable to show either "deficient performance" or "sufficient prejudice," the ineffectiveness claim will fail. *Strickland*, 466 U.S. at 700.

Mr. Barkell raises a number of claims of ineffective assistance of his trial counsel. For purposes of analysis it is convenient to divide them into two groups. The first group we address will be those that rest on the record of the state trial court. The second group consists of claims for which Mr. Barkell relies, at least in part, on evidence outside that record. Because the claims in the first group all relate to conduct during trial, we will refer to them as "Trial Errors." The remaining claims allege deficiencies in pretrial preparation and will be called "Pretrial Errors."

### 1. Alleged Trial Errors

Mr. Barkell argues that Mr. McQueen failed to represent him adequately during trial and lacked "basic legal knowledge concerning trial practice, rules and standards." Aplt. Br. at 25. Mr. Barkell first complains that Mr. McQueen did not question BV's competency to testify, arguing that a hearing on the matter would have "reinforced to BV [the] seriousness of the testimony" and, if she had been found incompetent, would have "substantially weaken[ed] the state's case." *Id*. at 34. He also suggests that such a hearing would have helped him prepare for trial. We are unpersuaded. Mr. Barkell does not cite any evidence that BV, who was 11 at the time of trial, was incompetent to testify. And as for the contention that a hearing on BV's competency would have impressed her with the seriousness of her testimony or provided a useful practice run for cross-examining her at trial, Mr. Barkell provides no basis for his speculation that BV might have

-9-

changed her testimony after such a hearing, nor does he explain how Mr. McQueen may have altered his cross-examination strategy as a result of the proposed hearing. More importantly, an attorney does not provide deficient representation by failing to pursue an unfounded motion, regardless of the possible tactical advantages that might result from doing so. Indeed, we would fault an attorney for intentionally abusing the judicial process in that manner. *See Putnam v. Head*, 268 F.3d 1223, 1246 (11th Cir. 2001) ("Although an attorney has an ethical duty to advance the interest of her client, that duty is limited by an equally solemn duty to comply with the law and standards of professional conduct." (internal quotation marks and brackets omitted)). Accordingly, we reject this claim.

Second, Mr. Barkell criticizes Mr. McQueen's cross-examination of BV, stating that he "used words, complex questions, and lines of reasoning that confused not only BV, but also the court." Aplt. Br. at 35. The Wyoming Supreme Court did not specifically address Mr. Barkell's contention that Mr. McQueen's cross-examination of BV was confusing, but rejected the general claim of ineffective cross-examination of BV on the ground that Mr. Barkell had "fail[ed] to elucidate any failings that fall below the standard of a reasonably competent attorney, especially any that were likely to have changed the outcome of the trial." *Barkell*, 55 P.3d at 1244. The Wyoming Supreme Court was not unreasonably construing *Strickland* in determining that a few poorly framed

-10-

sentences did not constitute ineffective representation. Applying AEDPA's deferential standard of review, we reject this claim of ineffective assistance.

Mr. Barkell also complains that Mr. McQueen's cross-examination of the state's expert witness was deficient, particularly in inadvertently eliciting a statement from the expert that children in stepparent households are more likely to be abused than other children. The Wyoming Supreme Court rejected this claim, deciding that Mr. McQueen's cross-examination of the state's expert was "relevant and useful to the theory which the defense was pursuing." *Id*. at 1244. Under AEDPA deference, we affirm the denial of this claim. We note, however, that this claim is intimately tied to Mr. Barkell's claim of ineffective pretrial preparation. We are not at this point disposing of the claim that deficient investigation of the case led Mr. McQueen (1) to ask questions that had prejudicial consequences and (2) to fail to ask questions that would have elicited helpful testimony.

Mr. Barkell next complains that Mr. McQueen did not do enough to undermine BV's credibility. He argues that Mr. McQueen called only three witnesses to challenge her testimony (two babysitters and her mother's aunt) and that he evoked only "minimally useful testimony" from them concerning BV's tendency to lie. Aplt. Br. at 40. Mr. Barkell's sole argument before the Wyoming Supreme Court regarding these witnesses was to complain of Mr. McQueen's unsuccessful attempt to introduce testimony of specific instances

of BV's untruthfulness, and to surmise that had Mr. McQueen understood the Wyoming evidentiary rules, he would have been able "to come up with an alternative theory of relevance for certain instances of untruthfulness—such as demonstrating BV's particular motives to lie about Mr. Barkell." Aplt. App. Vol. II at 390. The Wyoming Supreme Court rejected this argument, noting that Mr. McQueen was able to elicit testimony regarding BV's reputation for untruthfulness, and that no prejudice had resulted from the alleged shortcomings. *See Barkell*, 55 P.3d at 1245. In his brief to us, Mr. Barkell does not explain what more the witnesses could have done to undermine BV's testimony, except to suggest that testimony regarding specific falsehoods could have been admitted to show that "when BV thought she was in trouble, she simply lied and blamed someone else." Aplt. Br. at 46. But because this suggestion was not made to support Mr. Barkell's ineffectiveness claim in the Wyoming Supreme Court, the argument based on this suggestion is unexhausted, *see* 28 U.S.C. § 2254(b)(1)(A) (relief is not available under § 2254 unless "the applicant has exhausted the remedies available in the courts of the State"); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) ("[T]he federal claim must be fairly presented to the state courts . . . . Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies."). And in any event, failure to make this creative evidentiary argument at trial would not be "outside the wide range of

-12-

professionally competent assistance." *Strickland*, 466 U.S. at 690. The state court's decision that the alleged errors in presenting these defense witnesses did not constitute ineffective assistance was not contrary to or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d).

Mr. Barkell further argues that Mr. McQueen's closing argument was deficient because he "brought out a few inconsistencies in BV's testimony, but failed to point out many of the most important ones." Aplt. Br. at 41. Mr. Barkell specifically points to BV's misstating by eight months the date that she and her family had moved in with Mr. Barkell. The Wyoming Supreme Court rejected this argument, stating that Mr. McQueen had identified some inconsistencies in BV's testimony and that the "few additional inconsistencies identified by Barkell . . . are trivial at best and unrelated to the elements of the sexual abuse allegations. Counsel's decision not to list for the jury every possible inconsistency in the testimony cannot be said to be ineffective assistance." *Barkell*, 55 P.3d at 1244. We agree. Jurors pay attention. They are highly likely to observe the more significant inconsistencies in a witness's testimony, and they may well be more persuaded of the importance of an inconsistency if they think that they have made the discovery on their own rather than on the importuning of an advocate. *Cf. Cannon v. Mullin*, 383 F.3d 1152, 1164 (10th Cir. 2004) ("It is not . . . always the best trial strategy to exploit every inconsistency in the statements of a witness, even a witness called by opposing counsel."). The state

-13-

court's rejection of this claim was not contrary to or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d).

Mr. Barkell finally claims that Mr. McQueen's representation was ineffective "because he lacked rudimentary knowledge of trial procedures and legal principles." Aplt. Br. at 43. The Wyoming Supreme Court denied the various claims made by Mr. Barkell in this section of his brief because the alleged errors did not result in prejudice. *See Barkell*, 55 P.3d at 1244-45. We agree.

### 2. Alleged Pretrial Errors

Mr. Barkell makes two claims of ineffective assistance related to Mr. McQueen's preparation for trial: (1) failure to investigate and (2) failure to consult an expert witness. We address each in turn.

### a. Failure to Investigate

Mr. Barkell claims that Mr. McQueen failed to investigate adequately BV's school and counseling experiences, which would have led to evidence undermining her credibility. He asserts that he informed Mr. McQueen before trial that BV had been in counseling, but Mr. McQueen never attempted to speak with her counselors. He also asserts that he specifically requested that Mr. McQueen interview and call at trial BV's school counselor and fourth-grade teacher, whose testimony would have impeached BV's credibility, yet Mr. McQueen failed to do so. He states that Mr. McQueen should have known that counseling records would likely contain information regarding BV's alleged

-14-

tendency to lie, as well as information regarding "her feelings towards and possible motives against Mr. Barkell," Aplt. Br. at 28, and that under these circumstances "a reasonable attorney would have realized that family and school counseling involving the alleged victim could be a valuable resource in determining the alleged victim's personality, propensity and motives to lie," *id.* at 28-29. He contends that if Mr. McQueen had obtained this evidence, it "would have changed the outcome at trial." *Id.* at 28.

The Wyoming Supreme Court rejected this claim on the ground that "a defendant does not meet his burden to show his counsel's performance was deficient by mere speculation or equivocal inferences as to potential witnesses and testimony that could have been called at trial." *Barkell*, 55 P.3d at 1243. The court faulted Mr. Barkell for making "the assumption that, because BV was in counseling, there *may be* evidence in her counseling records to support his defense theory that she was either dishonest or motivated to fabricate the allegations of sexual assault," and added that "[b]ecause Barkell does not identify any specific testimony or evidence that the counselors would have offered, the presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment is not rebutted." *Id.*

But Mr. Barkell has identified such evidence for us. He has submitted a copy of his state-court motion for a limited remand, which included several attachments. A self-styled "affidavit" (unnotarized) from Mr. Barkell stated that

-15-

he had discussed BV's counseling history with Mr. McQueen and had asked him to interview Sue Maxted, BV's counselor, and Mrs. Hartman, BV's fourth-grade teacher, but that Mr. McQueen had not tried to obtain information regarding the counseling or otherwise complied with his requests. Mr. Barkell also attached an affidavit from his sister, Lynn Allred, who had attended several pretrial meetings with Mr. McQueen, in which she asserted that "Mr. McQueen failed to talk to or investigate many of the possible witnesses that we had presented to him," including Ms. Maxted and BV's teachers. She stated that Mr. McQueen "failed to get many of the documents and reports of the victim's past problems, including the reports from . . . their family counselor and reports from the previous safe houses and foster homes which the victim was in." Aplt. App. Vol. I at 144.

In addition, copies of BV's counseling records were attached to the motion. These records, which relate to counseling sessions when BV was in grades one through four, refer several times to BV's tendency to lie. The records from first grade contain three references to her lying, and records from second grade contain two such references.

In light of the support for Mr. Barkell's deficient-investigation claim, we must ask whether we can consider this support and, if so, how that affects our standard of review of the decision by the Wyoming Supreme Court. The answer to these questions depends on whether (1) Mr. Barkell made adequate efforts to

present evidence in state court and (2) the Wyoming court ruled on whether

Mr. Barkell's allegations, if true, would establish an ineffective-assistance claim.

Habeas applicants who have not received an evidentiary hearing in state court may be entitled to an evidentiary hearing in federal court. AEDPA states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>> (A) the claim relies on—
>>> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "If the prisoner did not fail to develop the factual basis for his claim in State court, § 2254(e)(2) is not applicable and a federal habeas court should proceed to analyze whether an evidentiary hearing is appropriate or required under pre-AEDPA standards." *Cannon v. Mullin*, 383 F.3d 1152, 1176 (10th Cir. 2004) (internal brackets and quotation marks omitted). Thus, the threshold issue is whether Mr. Barkell

-17-

exercised sufficient diligence in state court to avoid the strictures of § 2254(e)(2). We believe that he did.

Our conclusion is based on our reading of Wyoming law before Mr. Barkell's appeal. In most jurisdictions claims of ineffective assistance are brought in postconviction collateral proceedings. *See Massaro v. United States*, 538 U.S. 500, 504, 508 (2003) (agreeing with most federal circuits and a "growing majority of state courts" that ineffectiveness claims need not be raised on direct appeal and that "in most cases [postconviction collateral proceedings are] preferable to direct appeal for deciding claims of ineffective assistance."). Evidence of ineffectiveness can be gathered after trial, or even after exhaustion of direct appeals, and presented to the court for consideration. Wyoming law, however, allows criminal defendants to raise ineffectiveness claims only on direct appeal. *See Calene v. State*, 846 P.2d 679, 683 (Wyo. 1993). To supplement the trial record with evidence of ineffectiveness, the defendant must move the state supreme court (the state's sole appellate court) for a limited remand. *See id*. at 692.

As previously described, Mr. Barkell submitted such a motion, accompanied by several supporting attachments. The Wyoming Supreme Court denied the motion for limited remand without explanation. In its decision on the merits, however, the court explained as follows its rejection of his claim that he was improperly denied a remand:

[Mr.] Barkell claims that he was entitled to remand for an evidentiary hearing on his claims of ineffective assistance of counsel, citing *Calene v. State*, 846 P.2d 679 (Wyo. 1993). The present case, however, is more similar to *Griswold v. State*, 994 P.2d 920, 930-31 (Wyo. 1999). Appellant cannot rely on mere allegations and speculation for the purpose of obtaining a remand to develop a record on his claims of ineffective assistance. We previously denied Barkell's Motion for a Partial Remand and, in his appellate brief, he provides no additional facts or argument justifying a remand.

*Barkell*, 55 P.3d at 1245-46.

If the state court's denial of an evidentiary hearing was the consequence of Mr. Barkell's "failure" to comply with established requirements of state law, then under AEDPA he is not entitled to such a hearing in federal court and we grant deference under § 2254 to the state court's decision on the merits. *See* 28 U.S.C. § 2254(d) (deferring to state court's rulings of law); *see also* § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). Not complying with established requirements would ordinarily constitute the fault necessary to impose the strict limitations of § 2254(e)(2) on the opportunity for a federal evidentiary hearing.

But if Mr. Barkell complied with what reasonably appeared to be the established state-law requirements, he cannot be said to have "failed to develop the factual basis of [his] claim," *id.* § 2254(e)(2), even if his reasonable interpretation of state law turned out to be wrong, *see* Williams, 529 U.S. at 432 (such a failure "is not established unless there is a lack of diligence, or some greater fault"); *cf. Osborn v. Shillinger*, 861 F.2d 612, 618 (10th Cir. 1988) ("[I]f

-19-

a petitioner could not reasonably have been aware that a procedural rule would prevent the court from addressing the merits of his claim, his violation of that rule cannot bar federal review."). In our view, Mr. Barkell's efforts complied with a reasonable (although apparently incorrect) interpretation of the mandates of Wyoming law as it stood before his appeal. We do not question the Wyoming Supreme Court's construction of Wyoming law. As the dissent states, that court has the last word on whether Mr. Barkell's request for an evidentiary hearing satisfied the requirements of Wyoming law at the time of its ruling on that request. But whether Mr. Barkell, for purposes of § 2254(e)(2), was *at fault* in not obtaining an evidentiary hearing depends not on how Wyoming law was construed in his own appeal but, rather, on what the law reasonably appeared to be at the time he filed his request for an evidentiary hearing. In other words, it is clear (because the Wyoming Supreme Court said so) that his request for an evidentiary hearing was inadequate, but whether this inadequacy triggers denial of a federal evidentiary hearing under § 2254(e)(2) depends on whether he was negligent (or worse) in submitting an inadequate request. On this point we do not defer to the Wyoming courts. Indeed, a state court would have no occasion to determine whether the defendant has satisfied the § 2254(e)(2) requirements for a federal evidentiary hearing, so we have no state adjudication on the matter to which we could defer.

-20-

Turning, then, to the content of Wyoming law when Mr. Barkell moved for an evidentiary hearing, the requirements for obtaining a remand had been set forth in the Wyoming Supreme Court decision in *Calene*. That decision held that a defendant seeking an evidentiary hearing to develop a factual record must submit a motion for remand that is "appropriately supported by contentions defining and supporting any ineffectiveness claim in detail and supported, as may be appropriate, by affidavit sufficient to establish substantiality." *Calene*, 846 P.2d at 692; *see id.* at 687 ("[I]t is necessary for serious and specific allegations of ineffectiveness to be sufficiently stated and documented to show a real issue before the trial court can be put to the additional requirement of providing an evidentiary hearing."). The Wyoming Supreme Court remanded for an evidentiary hearing in that case. *Id.* at 694. The remand was predicated solely on "the letter of complaint by appellant addressed to the trial court." *Id.* at 684. The appellant had been convicted of charges relating to theft of an automobile. *Id.* at 681. He admitted painting the vehicle but denied knowing that it was stolen, saying that he was simply hired to do the painting. *Id.* at 682. His letter asserted that he had informed his attorney of witnesses who could testify to his lack of knowledge and other exculpatory matters. *Id.* The court concluded:

> We do not assume or determine that valuable witnesses did exist or that a failure of investigation and preparation adversely denied valuable testimony to the defendant. We find the contentions sufficiently substantial in the record now presented that a hearing should be held. At the hearing, defense counsel can testify and

> Calene can provide additional evidence for any substantiation regarding the usefulness of non-called witnesses as evidence upon which the trial court's decision may be rendered regarding the standard of counsel performance.

*Id.* at 693. Contrary to the dissent, we see nothing in the *Calene* opinion to suggest that the Wyoming Supreme Court was giving Calene "a break," Dissent at 7, and holding him to less stringent requirements than would be imposed on later appellants seeking an evidentiary hearing.

Mr. Barkell could reasonably have believed that his request for an evidentiary hearing met the *Calene* standard by making specific allegations of his counsel's pretrial failures to follow substantial leads from his client and resulting prejudice. Mr. Barkell's allegations may have been unsworn, but Mr. Calene's clearly were. Uncertain why the Wyoming Supreme Court denied him an evidentiary hearing, we believe that Mr. Barkell did not exhibit the fault required by *Williams*, 529 U.S. at 432, to bring him under § 2254(e)(2) for not obtaining an evidentiary hearing in state court. It is useful to contrast this case with two in which the defendant's showing was held inadequate. First, *Calene*, 846 P.2d at 687, cites *Leach v. State*, 836 P.2d 336 (Wyo. 1992), as providing an example of a showing that did not support remand for a hearing. In that case the support for a hearing in the motion for remand consisted only of the following:

> 2. It is Appellant's contention that his counsel at trial was ineffective, and he desires that the issue of ineffectiveness of counsel be raised on this appeal.

3. That there is no record of objection to ineffective assistance at the trial court level, nor does the present record contain facts necessary to develop appellant's claim.

*Leach*, 836 P.2d at 341. Mr. Barkell's showing is far stronger. Second, on Mr. Barkell's appeal the Wyoming court stated that his case was more similar to *Griswold v. State*, 994 P.2d 920, 930-31 (Wyo. 1999), than to *Calene*. *See Barkell*, 55 P.3d at 1245-46. But in *Griswold* the Wyoming Supreme Court's only discussion regarding the request for an evidentiary hearing was the following:

> Relying on *Calene v. State*, 846 P.2d 679 (Wyo. 1993), Griswold argues only that "appellate counsel is filing a Motion for Partial Remand and Affidavit in Support Thereof for the purpose of having the matter remanded to the District Court for the taking of evidence on this issue." We denied his Motion for Partial Remand, finding that Griswold failed to provide a substantial factual basis for his claim. Moreover, in his appellate brief, Griswold provides no facts or arguments in support of this assertion. We have consistently held that we will not consider claims unsupported by cogent argument and authority. *Madrid v. State*, 910 P.2d 1340, 1347 (Wyo. 1996).

994 P.2d at 930-31. This discussion would have given Mr. Barkell no guidance regarding what was missing from his pleadings that would be necessary to entitle him to an evidentiary hearing under Wyoming law. Accordingly, we hold that Mr. Barkell was not at fault in failing to obtain an evidentiary hearing in state court, and § 2254(e)(2) does not apply.

We must now decide whether Mr. Barkell is entitled to an evidentiary hearing under the pre-AEDPA standard, which provides that the habeas applicant is entitled to an evidentiary hearing in federal district court "if (1) the facts were

not adequately developed in the state court, so long as that failure was not attributable to the petitioner, . . . and (2) his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." *Cannon,* 383 F.3d at 1175 (internal brackets, quotation marks, and citations omitted). With respect to the first requirement, we have already decided that the lack of a state-court evidentiary hearing should not be attributed to Mr. Barkell. He proceeded in a manner that was reasonable under Wyoming precedent. Hence, Mr. Barkell is entitled to an evidentiary hearing in federal district court if his allegations, if true, would entitle him to habeas relief. *See Cannon*, 383 F.3d at 1175.

Before providing our view on the matter, we must first consider whether the Wyoming Supreme Court has already addressed that issue. The dissent suggests that the Wyoming court rejected Mr. Barkell's motion for remand on the ground that an evidentiary hearing would be futile because his ineffectiveness claim would fail even if he were able to prove the allegations in his motion. If that had been the basis for the court's rejection, AEDPA would require us to defer to the court's determination of the underlying federal constitutional law—namely, the determination that Mr. Barkell's allegations did not state a claim of ineffective assistance of counsel. *See Hammon v. Ward*, No. 05-6168, 2006 WL 3020639, at *7 (10th Cir. Oct. 25, 2006). That is, if the Wyoming court reasonably construed federal law to be that the allegations in Mr. Barkell's

-24-

remand motion failed to state a claim of ineffectiveness of counsel, we would need to accept that ruling and deny Mr. Barkell an evidentiary hearing in federal court, because the hearing could not benefit him on the merits. *See id.*

In our view, however, that was not the basis for the Wyoming Supreme Court's rejection of the motion to remand. First, that court's decision does not say that it is rejecting remand because it would be futile; it says that a hearing cannot be justified by "mere allegations and speculation." *Barkell*, 55 P.3d at 1246. The implication is that affidavits are required.

More importantly, the Wyoming court's discussion of the merits of Mr. Barkell's ineffectiveness claim (based on the record, without reference to the allegations and evidence in his motion for remand) suggests that its analysis would need to be revised if it were to assume the truth of the allegations in the remand motion, yet the court never hinted that it was undertaking such a revised analysis. When the court rejected on the merits Mr. Barkell's claim of ineffective assistance of counsel in trial preparation, it noted that "[h]e makes the assumption that, because BV was in counseling, there *may be* evidence in the counseling records to support his defense theory that she was either dishonest or motivated to fabricate the allegation of sexual assault," *id.* at 1243, and then went on to say that the presumption of effective assistance had not been rebutted "[b]ecause Barkell does not identify any specific testimony or evidence that the counsellors would have offered," *id.* These statements were made without consideration of

-25-

the materials contained in Mr. Barkell's motion for remand (including copies of counseling records repeatedly stating that BV had lied), because the motion had been denied. They suggest, though, that a different result—or at least further consideration and analysis—would be required to dispose of the merits if Mr. Barkell had in fact identified "specific . . . evidence" in the counseling records showing that BV "was . . . dishonest." *Id*. Consequently, the Wyoming court could not conclude that the allegations in Mr. Barkell's motion for remand failed to state a claim of ineffective assistance unless the court were to go beyond its earlier analysis and determine that counseling records reporting BV's dishonesty would not support the ineffectiveness claim. That the *Barkell* opinion contained no such analysis strongly implies that its rejection of the motion to remand was based on the form, rather than the substance, of the allegations in the motion.

We therefore conclude that the Wyoming Supreme Court has not decided whether Mr. Barkell's allegations would entitle him to relief if he proved them. In denying Mr. Barkell's ineffectiveness claim, the Wyoming court was deciding a different issue from what is before us. Accordingly, we have no Wyoming decision to defer to when we consider the sufficiency of Mr. Barkell's allegations of ineffective pretrial preparation. Our situation is similar to that of a federal court considering a habeas claim after a federal-court evidentiary hearing provides material facts not considered by the state court. *See Bryan v. Mullin*,

335 F.3d 1207, 1215-16 & n.7 (10th Cir. 2003) (en banc) (declining to apply § 2254(d)'s deferential standard of review when the state court had denied an evidentiary hearing on ineffectiveness claims and federal district court had conducted one); *Mayes v. Gibson*, 210 F.3d 1284, 1289 (10th Cir. 2000) (reviewing additional evidence proffered by habeas applicant without deference to the state court's factual findings when state court denied an evidentiary hearing).

Conducting our independent analysis of Mr. Barkell's allegations, we believe that he has adequately alleged deficient pretrial investigation. "The duty to investigate derives from counsel's basic function . . . to make the adversarial testing process work in the particular case." *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) (internal quotation marks omitted). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. (internal quotation marks omitted). In light of the prosecution's complete reliance on the victim's veracity and the leads given by Mr. Barkell and his sister, it would have been unreasonable for Mr. McQueen not to investigate whether records and witnesses regarding BV's counseling and school experiences could suggest her propensity to lie or her motive to harm Mr. Barkell. *See Rompilla v. Beard*, 125 S. Ct. 2456, 2460, 2467 (2005) (it was unreasonable for counsel not to read case file he knew the prosecution would rely on at sentencing, even though the defendant and his family had suggested that no mitigating evidence existed). The content of the

records submitted by Mr. Barkell with his motion for limited remand indicates that the results of any such investigation would have been helpful to the defense. We therefore conclude that Mr. Barkell is entitled to an evidentiary hearing in federal district court, at which the court can ascertain whether Mr. Barkell is able to prove the necessary deficiencies and prejudice.

### b.    Failure to Consult Expert

Mr. Barkell also complains about Mr. McQueen's failure to consult with or call at trial an expert witness on child psychiatry. He argues that this failure was unreasonable because Mr. McQueen had the resources to call an expert witness, it is common for the prosecution to call an expert witness in child-sex-abuse cases, and a reasonable defense attorney would use an expert to prepare. He claims that his defense was prejudiced by this failure because (1) consultation with an expert would have aided Mr. McQueen's cross-examination of the state's expert and BV, and (2) a defense expert "could have explained to the jury how children's testimony should be evaluated, as well as shed light on problems with the testimony of the state's expert." Aplt. Br. at 32.

An affidavit from Ms. Lozano, the public defender originally assigned to Mr. Barkell's case, submitted with the state-court motion for a limited remand supports his claim that it was unreasonable for Mr. McQueen not to consult an expert. The affidavit states, "[I]t is standard practice to enlist the use of an expert

in child sex abuse cases, whether to help prepare for cross examination or to testify as a defense witness." Aplt. App. at 138-39.

As for a showing of prejudice, although the independent-expert report submitted by Mr. Barkell with the remand motion lists 14 factors that support BV's credibility, it also lists five factors that *question* her credibility. In addition, the report states that the "expert could have . . . informed the jury about the body of knowledge and research on children's false allegations of sexual abuse." *Id*. at 216. On the other hand, the report also stated: "I do not disagree with anything the state's expert said." *Id*.

This last statement convinces us that it was not ineffective assistance to fail to call the expert as a witness. Ultimately, her testimony would simply have corroborated that of the government's expert, and would have had the added prejudicial impact of emanating from the defense.

But consultation to assist in cross-examination is another matter. The report suggests that Mr. McQueen could have scored some points on cross-examination of the prosecution's expert. And, more importantly, prior consultation would likely have prevented him from asking whether children in stepparent families are more likely to be abused than other children, a question that elicited a damaging affirmative answer. Although we are uncertain whether this prejudice would itself be sufficient to sustain Mr. Barkell's ineffectiveness claim, the prejudice resulting from this lapse may well have added to any

-29-

prejudice resulting from Mr. McQueen's failure to investigate BV's school and counseling experience. Mr. Barkell is thus entitled to include this matter in the evidentiary hearing in federal district court. After the hearing the court will be equipped to decide whether the failure to consult an expert was constitutionally ineffective in itself or in combination with the alleged failure to investigate.

## III. CONCLUSION

We AFFIRM the district court's denial of relief on Mr. Barkell's failure-to-remand claim and on those of Mr. Barkell's ineffectiveness claims related to his attorney's performance at trial. We REVERSE the denial of Mr. Barkell's other ineffectiveness claims, and REMAND to the district court to hold an evidentiary hearing.

O5-8045, *Barkell v. Crouse*
**O'BRIEN**, J., concurring in part and dissenting in part

I am pleased to join the majority opinion except for Part 2 - Alleged Pretrial Errors. From that discussion and holding, I respectfully dissent.

The masterful style of the majority opinion obscures what, for me, is the core issue relating to the claimed pretrial errors, AEDPA deference.

> There is no doubt Congress intended AEDPA to advance these doctrines [comity, finality and federalism]. Federal habeas corpus principles must inform and shape the historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts. In keeping this delicate balance we have been careful to limit the scope of federal intrusion into state criminal adjudications and to safeguard the States' interest in the integrity of their criminal and collateral proceedings. *See*, *e.g., Coleman v. Thompson,* 501 U.S. 722, 726, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("This is a case about federalism. It concerns the respect that federal courts owe the States **and the States' procedural rules** when reviewing the claims of state prisoners in federal habeas corpus"); *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) ("[T]he doctrines of procedural default and abuse of the writ are both designed to lessen the injury to a State that results through reexamination of a state conviction on a ground that the State did not have the opportunity to address at a prior, appropriate time; and both doctrines seek to vindicate the State's interest in the finality of its criminal judgments").

*Williams v. Taylor*, 529 U.S. 420, 436 (2000) (emphasis added).

The Wyoming Supreme Court twice addressed Barkell's claims of ineffective assistance of trial counsel and his request for a hearing on that issue. It considered and denied his request for an evidentiary hearing in an unpublished order. Later it revisited the issue (as well as his other arguments) in a formal

opinion. *Barkell v. State*, 55 P.3d 1239 (Wyo. 2002). It concluded his request for

a hearing was not adequately supported, saying:

> In his second issue, Barkell claims that he was entitled to remand for
> an evidentiary hearing on his claims of ineffective assistance of
> counsel, citing *Calene v. State,* 846 P.2d 679 (Wyo.1993). The
> present case, however, is more similar to *Griswold v. State,* 994 P.2d
> 920, 930-31 (Wyo.1999). Appellant cannot rely on mere allegations
> and speculation for the purpose of obtaining a remand to develop a
> record on his claims of ineffective assistance. We previously denied
> Barkell's Motion for a Partial Remand and, in his appellate brief, he
> provides no additional facts or argument justifying a remand. *Id.*

*Id*. at 1245-46.

The Wyoming Supreme Court's opinion is crystal clear. In AEDPA's

words, Barkell failed to "develop the factual basis for his claim."[1] That is a merits

decision entitled to AEDPA deference.[2] But instead of deferring to the Wyoming

Supreme Court the majority shifts focus saying, "Thus, the threshold issue is

whether Mr. Barkell exercised sufficient diligence in state court to avoid the

strictures of § 2254(e)(2)."[3] (Majority Op. at 18.) Since he "identified such

---

[1] "If the applicant has failed to develop the factual basis of a claim *in State court proceedings,* the [federal district] court *shall not hold an evidentiary hearing* on the claim, unless . . . ." 28 U.S.C. § 2254(e)(2) (emphasis added).

[2] 28 U.S.C. § 2254(d)

[3] If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
    (A) the claim relies on—
        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously
(continued...)

evidence for us" [4] (Majority Op. at 16) he thereby qualifies for a hearing. But

Barkell has identified no evidence for us that he had not already identified for the

Wyoming Supreme Court.[5] The majority simply substitutes its view of sufficiency

for that of the Wyoming Supreme Court. Conveniently that obviates any need to

demonstrate how the Wyoming decision is contrary to or an unreasonable

---

[3](...continued)
unavailable; or
     (ii) a factual predicate that could not have been previously
discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by
clear and convincing evidence that but for constitutional error, no
reasonable factfinder would have found the applicant guilty of the
underlying offense.

28 U.S.C. § 2254(e)(2).

[4] The evidence Barkell has "identified for us" is the very same evidence the
Wyoming Supreme Court held to be insufficient.

[5] In that regard this case is distinctly different from *Williams*. In *Williams*
no state court had ruled upon the adequacy of a request for an evidentiary hearing
because the underlying issue was first raised in federal court where Williams
claimed the Commonwealth of Virginia failed to disclose a plea agreement with a
co-defendant offered in exchange for incriminating testimony against him.
*Williams*, 529 U.S. at 427. There was no occasion to consider whether deference
was due to a state determination about the adequacy of his application since no
application was made to a state court. The issue is squarely presented here, where
the Wyoming Supreme Court considered and decided the issue.
    The ultimate question is whether this Court is enforcing federally derived
rights or merely usurping state prerogatives. If this state decision is to be
overturned, the panel should clearly explain how the Wyoming Supreme Court's
decision is contrary to or an unreasonable application of federal law as
determined by the United States Supreme Court.

-3-

application of United States Supreme Court precedent. Indeed, no attempt is made to do so.

I think the majority has miscast the issue. It confesses the obvious — the Wyoming Supreme Court is the final arbiter of Wyoming law and procedure — and it acknowledges that under Wyoming law Barkell's petition was insufficient "because the Wyoming Supreme Court said so." (Majority Op. at 21.) But then, citing *Williams*, it says the issue here is not the sufficiency of the application, but diligence in presenting it. It errs because in this case the issue of diligence is subsumed in the sufficiency inquiry.[6] Diligence requires all available evidence be discovered, marshaled and presented to the state tribunal. *Id* at 437. Barkell presented to the Wyoming Supreme Court such evidence as he thought sufficient in support of his petition and he offered no new evidence to the district court. He does not claim the prosecution "hid the ball" or some other happenstance[7] prevented him from finding and presenting relevant material. But the majority puts a new twist on the diligence test.

---

[6] "Yet comity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was ***unable*** to develop his claim in state court despite diligent effort." *Williams*, 529 U.S. at 437 (emphasis added).

[7] "To say a person has failed in a duty implies he did not take the necessary steps to fulfill it. He is, as a consequence, at fault and bears responsibility for the failure. In this sense, a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." *Williams*, 529 U.S. at 432.

It says Barkell exercised diligence in presenting his hearing request because he followed established procedures (the *Calene* decision[8]) when he requested an evidentiary hearing. But the Wyoming Supreme Court, relying on one of its subsequent cases, held otherwise. Under Wyoming case law Barkell's petition was insufficient because he failed to make the substantial factual showing required to obtain such a hearing.[9]

The majority clearly thinks he made an adequate showing, but rather than face the issue head-on (with the attendant requirement of demonstrating the Wyoming decision was contrary to or an unreasonable application of United States Supreme Court precedent) it disguises a substantive disagreement as a diligence inquiry.[10] It is fair, then, to ask how diligence should be measured in

---

[8] *Calene v State*, 846 P2d 679 (Wyo. 1993).

[9] The Wyoming Supreme Court specifically refused to apply *Calene* to Barkell's claim, holding that the issue of sufficiency was controlled by its later decision in *Griswold v. State*, 994 P.2d 920 (Wyo. 1999). *Barkell*, 55 P.3d at 1245.

[10] For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court. §2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements [cause and prejudice] are met.

Williams, 529 U.S. at 437.

-5-

this case.  Barkell presented his supporting evidence (he has offered nothing new), so the question is procedural compliance.  While conceding that "[n]ot complying with established requirements would ordinarily constitute the fault necessary to impose the strict limitations of § 2254(e)(2) on the opportunity for a federal evidentiary hearing," the majority concludes, "[i]n our view, Mr. Barkell's efforts complied with a reasonable (although apparently incorrect) interpretation of the mandates of Wyoming law as it stood before his appeal."  (Majority Op. at 20-21.)  In other words, the majority is free to decide, in spite of the Wyoming Supreme Court, what kind of showing Wyoming procedure required for an evidentiary hearing at the time Barkell made his request.  I do not see how that is consonant with *Williams*, 529 U.S. at 437 ("Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court *in the manner prescribed by state law*." (emphasis added)).

Contrary to the majority's suggestion, no procedural bar prevented or discouraged Barkell from making a sufficient showing.  He was free to present whatever he thought appropriate.  The question is not whether he was diligent in identifying and presenting facts justifying an evidentiary hearing, but whether his efforts were adequate.  The Wyoming Supreme Court said "no," the majority says "yes."  Assuming the majority is correct and the Wyoming Supreme Court erred, AEDPA deference is still required.  The state decision must be unreasonable, not merely incorrect.  *Williams*, 529 U.S. at 411 ("[A] federal habeas court may not

-6-

issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").[11] I am not prepared to say the Wyoming Supreme Court was wrong, let alone unreasonable.

The majority says Barkell's efforts, while unsuccessful, were reasonable under existing standards. It thus implies that the Wyoming Supreme Court changed the sufficient showing rules in this case and without adequate notice. Specifically it says the *Calene* court relied upon an unsworn letter to justify a remand for an evidentiary hearing but Barkell was denied a hearing because his factual recitals were not sworn. The majority assumes that was the basis for denying a hearing to Barkell (the Wyoming Supreme Court said no such thing). But crediting the majority's assumption does not change the result. In *Calene* the correct procedure for presenting ineffective assistance of counsel claims was definitively explained for the first time. In that watershed decision the Wyoming Supreme Court ordered a remand for an evidentiary hearing based upon Calene's unsworn letter. But it also laid out for future cases the threshold requirement for obtaining such a hearing saying, "a motion for remand should be made and

---

[11]Barkell was represented by appellate counsel (who was not his trial attorney). If a more robust showing was required (as the Wyoming Supreme Court held) his appellate counsel may have been inadequate. As I explain later, that can be explored in state post conviction proceedings, which have not been exhausted.

appropriately supported by contentions defining and supporting any ineffectiveness claim in detail and supported, as may be appropriate, by affidavit sufficient to establish substantially [*sic*]." *Calene*, 846 P.2d at 692. The *Griswold* case, which the Wyoming Supreme Court cited in denying Barkell's request for a remand, is no more or less demanding. In *Griswold* the court said:

> We denied his Motion for Partial Remand, finding that Griswold failed to provide a substantial factual basis for his claim. Moreover, in his appellate brief, Griswold provides no facts or arguments in support of this assertion. We have consistently held that we will not consider claims unsupported by cogent argument or pertinent authority. *Madrid v. State*, 910 P.2d 1340, 1347 (Wyo.1996).

*Griswold,* 994 P.2d at 930-31.

The Wyoming Supreme Court has not changed the rules, let alone done so without notice. It gave Calene a break (ostensibly because he was a pioneer on the issue) but, in doing so, it also announced a demanding rule for future cases (detailed motion supported, as appropriate, by affidavit). Subsequent Wyoming decisions do not suggest the affidavit rule has been ignored or relaxed.

In his quest for a hearing on his claim of ineffectiveness of trial counsel Barkell enjoyed the services of appellate counsel who was not involved in his trial. Barkell's appellate counsel is experienced and well aware of the showing required for a remand to the state district court for an evidentiary hearing on trial counsel ineffectiveness. The majority correctly observes that Wyoming requires ineffectiveness of trial counsel to be raised on direct appeal. (Majority Op. at 18-

-8-

19.) But that rule does not apply to ineffective appellate counsel. If appellate counsel was ineffective Barkell has another remedy. He can petition for post conviction relief in the state district court. The relevant statute provides:

> (a) A claim under this act is procedurally barred and no court has jurisdiction to decide the claim if the claim:
>
>> (I) Could have been raised but was not raised in a direct appeal from the proceeding which resulted in the petitioner's conviction;
>>
>> (ii) Was not raised in the original or an amendment to the original petition under this act; or
>>
>> (iii) Was decided on its merits or on procedural grounds in any previous proceeding which has become final.
>
> (b) Notwithstanding paragraph (a)(I) of this section, a court may hear a petition if:
>
>> (I) The petitioner sets forth facts supported by affidavits or other credible evidence which was not known or reasonably available to him at the time of a direct appeal; or
>>
>> (ii) *The court makes a finding that the petitioner was denied constitutionally effective assistance of counsel on his direct appeal.* This finding may be reviewed by the supreme court together with any further action of the district court taken on the petition.
>
> (c) This act does not apply to claims of error or denial of rights in any proceeding:
>
>> (I) For the revocation of probation or parole;
>>
>> (ii) Provided by statute or court rule for new trial, sentence reduction, sentence correction or other post-verdict motion.

(d) No petition under this act shall be allowed if filed more than five (5) years after the judgment of conviction was entered.

Wyo. Stat. § 7-14-103 (1977) (emphasis added.)

Barkell has not exhausted his potential claim of ineffective assistance of appellate counsel.

AEDPA requires deference to the Wyoming Supreme Court in this case. Its decision was not contrary to or an unreasonable application of federal law as determined by the United States Supreme Court. We should affirm the district court in all respects.